IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| CORWIN D. ARMSTRONG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:04CV01206 |
| | ) | |
| DUKE UNIVERSITY, THE FUQUA | ) | |
| SCHOOL OF BUSINESS | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

MEMORANDUM OPINION

Tilley, Chief Judge

This case arises out of an employment dispute between the plaintiff, Corwin D. Armstrong, and the defendant, Duke University. It is now before the court on the Defendant's Motion to Stay and Compel Arbitration Pursuant to the Federal Arbitration Act [Doc. # 5]. For the reasons set forth below, the Defendant's motion will be GRANTED.

I.

Mr. Armstrong, an African-American, was employed from approximately May 4, 1998 until June 18, 2004 by Duke University's Fuqua School of Business ("Duke"). During this period, Mr. Armstrong held several different technology management positions in Duke's Executive MBA program.[1] Mr. Armstrong applied

---

[1] In particular, Mr. Armstrong was responsible for managing the Distributed Learning Services Division. This division was responsible for maintaining the technology and computer networks for Duke's Global and Cross Continent MBA

for a position with Duke on March 31, 1998 and completed an official "Application for Employment" form in connection with his application. (Armstrong Decl., Ex. B.) This form includes a page entitled "Applicant's Certification" which contains the following paragraph:

> I hereby agree that any dispute or controversy arising out of or related to my employment or termination by Duke University shall be subject to final and binding resolution through the applicable grievance or dispute resolution procedure, as may be periodically amended and which is available upon request from the Department of Human Resources.

(Decl. of Denise L. Evans, Director of Labor & Staff Relations, Duke University, Ex. B, Applicant's Certification.) Mr. Armstrong signed the "Applicant's Certification" page on the signature line directly underneath this paragraph. (Id.)

Duke's dispute resolution procedure is entitled "Exempt Staff Member Dispute Resolution Procedure" ("DRP").[2] Duke requires all employees who are not subject to the terms of a collective bargaining agreement with a labor union to resolve any disputes concerning their employment or termination from employment through the DRP. (Evans Decl. ¶ 1.) The DRP provides for the resolution of employment disputes through the following steps: (1) the employee is encouraged to bring his or her complaint directly to the attention of the person whose actions

---

programs. These networks enable students and faculty to interact electronically across large geographic distances. (Evans Decl. ¶ 7.)

[2] The term "Exempt" refers to employees who are exempt from the overtime pay requirements of the Fair Labor Standards Act.

are the subject of the dispute; (2) if the employee wishes to pursue the issue, he or she may present a written statement of the dispute to his or her Department Head within thirty days of the occurrence of the action or event which is the subject of the dispute; (3) a formal review hearing (conducted by the direct supervisor of the Department Head) is held within thirty days from the presentation of the written statement to the Department Head; (4) if the employee is dissatisfied with the decision resulting from the formal review hearing, he or she may request further review by the associate Vice President of Human Resources within ten days of the issuance of the decision; and (5) if still dissatisfied, the employee may request final binding arbitration within ten days of the issuance of a decision by the associate Vice President of Human Resources. (Evans Decl., Ex. A, Exempt Staff Member Dispute Resolution Procedure.) The DRP is widely distributed among Duke employees and a current copy is always available to employees online through Duke's computer network or from the Department of Human Resources. (Evans Decl. ¶ 2.)

On December 22, 2004, Mr. Armstrong, a *pro se* plaintiff, filed suit in the Middle District of North Carolina alleging that he had been wrongfully terminated by Duke University because of his race and in retaliation for allegations he had made of discriminatory employment practices. Prior to filing this case, Mr. Armstrong did not submit his claims to arbitration as required under the DRP. Duke filed a Motion to Stay and to Compel Arbitration on January 25, 2005 [Doc. # 5]

3

and Mr. Armstrong responded on February 15, 2005 [Doc. # 8]. Duke replied on March 1, 2005 [Doc. # 10].

II.

Section 2 of the Federal Arbitration Act provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The provisions of the FAA are mandatory and therefore courts must compel arbitration whenever a valid arbitration agreement exists. See Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985). A party can compel arbitration under the FAA if it establishes: (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision purporting to cover the dispute and that is enforceable under general principles of contract law, (3) the relationship of the transaction, as evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of a party to arbitrate the dispute. Am. Gen. Life & Accident Ins. Co. v. Wood, 429 F.3d 83, 87 (4th Cir. 2005).

In this case, there is no question that (1) a dispute exists between Mr. Armstrong and Duke and (2) Mr. Armstrong has not made use of the arbitration procedure laid out in the DRP. Moreover, Duke has provided ample evidence that

its employment agreement with Mr. Armstrong involved interstate commerce (Evans Decl. ¶ 7) and Mr. Armstrong agreed with this in his response. (Armstrong Decl. ¶¶ 6-7.) Therefore, the only issue before the court in this case is whether the arbitration agreement between Mr. Armstrong and Duke is enforceable.

To determine whether an arbitration agreement is enforceable, courts apply the relevant state law principles governing the formation of contracts. First Option of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995); see also Allied-Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 281 (1995) ("States may regulate contracts, including arbitration clauses, under general contract law principles and they may invalidate an arbitration clause upon such grounds as exist at law or in equity for the revocation of any contract.") (citation omitted); Am. Gen. Life & Accident Ins. Co., 429 F.3d at 87 ("[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2.") (citation omitted). It appears that North Carolina law governs the contract in this case.[3] For a valid contract to exist under North Carolina law, the three elements of offer, acceptance, and consideration must be present, and none of the recognized defenses to contract formation, such as fraud, duress, or unconscionability, should apply. Copy Prods., Inc. v.

---

[3] The Defendant has cited a number of cases from the North Carolina courts concerning the interpretation and enforcement of contracts. The Plaintiff has not raised the issue of whether North Carolina law applies to his employment contract with Duke. Therefore, the court will assume that North Carolina law governs the analysis in this case.

5

Randolph, 303 S.E.2d 87, 88 (N.C. Ct. App. 1983); see also Snyder v. Freeman, 266 S.E.2d 593, 602 (N.C. 1980) ("[M]utual assent and the effectuation of the parties' intent is normally accomplished through the mechanism of offer and acceptance.") (citation omitted).

However, when determining if a valid arbitration agreement exists, courts must recognize the "liberal federal policy favoring arbitration agreements . . . ." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Id. at 24-25; see also Johnston County v. R.N. Rouse & Co., Inc., 414 S.E.2d 30, 32 (N.C. 1992) ("North Carolina has a strong public policy favoring the settlement of disputes by arbitration.").

### III.

Mr. Armstrong contends that the arbitration agreement is unenforceable because (1) there was a lack of mutual assent to the agreement; (2) the Defendant failed to make the agreement available to Mr. Armstrong; (3) the agreement is unconscionable; and (4) the Defendant is a "transportation worker" and is thus exempt from the Federal Arbitration Act. (Pl.'s Resp. 2.) Mr. Armstrong does not dispute that the DRP is part of his employment agreement with Duke University.

"The essence of any contract is the mutual assent of both parties to the terms of the agreement so as to establish a meeting of the minds." Snyder, 266 S.E.2d at 602. Under North Carolina law, "[i]f a question arises concerning a party's assent to a written instrument, the court must first examine the written instrument to ascertain the intention of the parties." Routh v. Snap-On Tools Corp., 423 S.E.2d 791, 795 (N.C. Ct. App. 1992). If the language of the contract is "clear and unambiguous," the court must interpret the contract as it is written. Martin v. Vance, 514 S.E.2d 306, 309 (N.C. Ct. App. 1999).

In this case, Mr. Armstrong signed the "Applicant's Certification" form on the signature line located immediately underneath the dispute resolution clause. This clause included the following language: "any dispute or controversy arising out of or related to [his] employment or termination by Duke University shall be subject to final and binding resolution through the applicable grievance or dispute resolution procedure . . . ." (Evans Decl., Ex. B.) The language of the dispute resolution clause is "clear and unambiguous." See Martin, 514 S.E.2d at 309 ("As the language in the agreement is unambiguous, we need not look beyond the writing itself to determine whether there was mutual assent to the agreement."). In signing the "Applicant's Certification," Mr. Armstrong agreed that any dispute arising out of his employment with Duke was to be addressed through Duke's dispute resolution procedure.

However, Mr. Armstrong contends that there was no mutual assent to the

7

arbitration agreement because the agreement (1) was "tucked into an otherwise innocuous employment application," (2) "did not explicitly mention waiver of protections provided by federal and state statutory laws," and (3) did not contain the word "arbitration" and thus failed to put prospective employees "on notice to the fact they were being asked to waive a judicial forum by simply signing application for employment." (Armstrong Decl. ¶ 1.)

None of Mr. Armstrong's contentions justify a finding that there was no mutual assent to the DRP. It is well-established that an arbitration clause may be included in a contract covering other topics. See Carteret County v. United Contractors of Kinston, Inc., 462 S.E.2d 816, 820 (N.C. Ct. App. 1995); Red Springs Presbyterian Church v. Terminix Co. of N.C., Inc., 458 S.E.2d 270, 272-73 (N.C. Ct. App. 1995). Moreover, even if Mr. Armstrong did not realize that he had agreed to be bound by the DRP when he signed the employment application, under North Carolina law, "one who signs a paper writing is under a duty to ascertain its contents [and] is held to have signed with full knowledge and assent as to what is therein contained." Williams v. Williams, 18 S.E.2d 364, 366 (N.C. 1942); see also Massey v. Duke Univ., 503 S.E.2d 155, 158 (N.C. Ct. App. 1998) ("The duty to read an instrument, or to have it read before signing it, is a positive one, and the failure to do so, in the absence of any mistake, fraud, or oppression, is a circumstance against which no relief may be had, either at law or in equity.") (citation omitted). As a result, the signer of a document is charged with full

8

knowledge of its contents, Biesecker v. Biesecker, 302 S.E.2d 826, 829-30 (N.C. Ct. App. 1983), and with assent to the terms contained therein. Martin, 514 S.E.2d at 309-10.

Mr. Armstrong is also incorrect in his assertion that there was no mutual assent because the dispute resolution clause in the employment application did not explicitly mention the "waiver of protections provided by federal and state statutory laws." (Armstrong Decl. ¶ 2.) It is well-established that "by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 123 (2001) (citation omitted). Mr. Armstrong simply did not waive any substantive rights when he signed the employment application.

Furthermore, the fact that the dispute resolution clause did not contain the word "arbitration" does not support the conclusion that Mr. Armstrong did not assent to the dispute resolution procedure. The "Applicant's Certification" form clearly indicated that any disputes arising out of Mr. Armstrong's employment contract would be resolved through the DRP. Section IV of the DRP is devoted to an explanation of the final step of the dispute resolution procedure: binding impartial arbitration. (Evans Decl., Ex. A.) See Bennish v. N.C. Dance Theater, Inc., 422 S.E.2d 335, 338 (N.C. Ct. App. 1992) (enforcing arbitration clause contained in employee guidelines that were incorporated by reference into

9

employment contract). Furthermore, the dispute resolution clause on the "Applicant's Certification" form clearly and unambiguously indicates that the dispute resolution procedure "is available upon request from the department of Human Resources." (Evans Decl., Ex. B.) If Mr. Armstrong wanted more information about the steps involved in the DRP, he was able to contact the Human Resources Department or access the document through Duke's internal internet network. (Evans Decl. ¶ 2.)

Mr. Armstrong also contends that the dispute resolution clause is unconscionable because the "vague and non-explicit language" in the clause does not adequately alert "unsuspecting job applicants" of the "magnitude of what the Defendant is trying to get them to forfeit when they sign an application for employment." (Pl.'s Resp. 2.) In North Carolina, courts "will generally refuse to enforce a contract on the ground of unconscionability only when the inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other." Brenner v. Little Red School House, Ltd., 274 S.E.2d 206, 210 (N.C. 1981) (citation omitted). In determining whether a contract is unconscionable, courts consider the facts and circumstances of a particular case and if the provisions of the contract are "so one-sided that the contracting party is denied any opportunity for a meaningful choice," then the contract should be found

unconscionable. Id.

In this case, there is no evidence that the agreement signed by Mr. Armstrong was so one-sided as to preclude him from making a meaningful choice. As discussed above, the language of the dispute resolution clause is not "vague and inexplicit." It clearly indicates that any dispute arising from Mr. Armstrong's employment with Duke shall be subject to the DRP. Moreover, "[a]greeing to arbitration does not, by itself, prejudice plaintiff or prevent plaintiff from being heard in the appropriate forum." Eddings v. S. Orthopaedic & Musculoskeletal Assoc., P.A., 605 S.E.2d 680, 685 (N.C. Ct. App. 2004). In signing the "Applicant's Certification," Mr. Armstrong has not "forfeited" any substantive rights. See Miller v. Two State Constr. Co., Inc., 455 S.E.2d 678, 681 (N.C. Ct. App. 1995) ("An agreement to arbitrate a dispute is not an unenforceable contract requiring waiver of a jury; thus the trial court erred in concluding that [the arbitration agreement] was unconscionable . . . .").

Finally, Mr. Armstrong contends that he is a "transportation worker" and is therefore specifically exempted from the Federal Arbitration Act under the provisions of section 1 of the Act.[4] However, the Supreme Court has declined to adopt "an expansive construction of the FAA's exclusion provision that goes

---

[4] Section 1 of the Federal Arbitration Act provides for the exclusion of "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce" from the requirements of the Act. 9 U.S.C. § 1.

11

beyond the meaning of the words Congress used." Circuit City Stores, Inc., 532 U.S. at 119. In Circuit City, the Supreme Court expressly rejected the argument that section 1 applied to all employment contracts in favor of the conclusion that "[s]ection 1 exempts from the FAA only contracts of employment of transportation workers." Id. In so doing, the Court emphasized that section 1 of the FAA is to be narrowly construed. Id.; see also Adkins v. Labor Ready, Inc., 303 F.3d 496, 505 (4th Cir. 2002) ("Section 1 of the FAA represents a narrowly targeted exception to a well-established, broad preference in favor of arbitration. As such it must be construed narrowly.") (citation omitted).

While employed at the Fuqua School of Business, Mr. Armstrong worked in several positions involving technology management. He contends that these positions involved the "use of communications technologies for transporting portions of Defendant's goods and services throughout the United States and into several foreign countries." (Armstrong Decl. ¶ 6-7.) However, the Fourth Circuit has explicitly rejected efforts to "stretch" the definition of the term "transportation worker." Adkins, 303 F.3d at 505. In Adkins, the court held that temporary employment agency employees who were sometimes assigned to transportation-related jobs were not transportation workers within the meaning of section 1. Id. ("To apply the term "transportation workers" in this way stretches it past the breaking point."); see also O'Neil v. Hilton Head Hosp., 115 F.3d 272, 274 (4th Cir. 1997) (holding that the section 1 exemption is limited to "seamen, railroad

12

workers, and other workers actually involved in the interstate transport of goods"); Veliz v. Cintas Corp., 2004 WL 2452851 at *5-6 (N.D. Cal. 2004) (conducting a survey of cases addressing this issue and concluding that plaintiffs who are not directly transporting goods and do not work in the transportation industry itself are not exempt under section 1 of the FAA). Mr. Armstrong's position in technology management does not fall within the narrow definition of a transportation worker and therefore he is not exempt from the provisions of the Federal Arbitration Act.

**IV.**

For the reasons set forth above, the defendant Duke University's Motion to Stay and Compel Arbitration will be GRANTED.

This the day of January 27, 2006

/s/ N. Carlton Tilley, Jr.<br>United States District Judge

13